# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DAVID J. HAMILTON,

      Petitioner,     :   Case No. 1:12-cv-716

  - vs -            Chief Judge Susan J. Dlott
                Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional Institution,
               :
         Respondent.

## REPORT AND RECOMMENDATIONS

Represented by counsel from the Ohio Public Defender's Office, David Hamilton brought this habeas corpus case under 28 U.S.C. § 2254 pleading one ground for relief:

> **Ground One:** The Scioto County, Ohio Court of Appeals unreasonably applied *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528 (1984), when it determined that the trial court did not err in denying Mr. Hamilton's request that the jury be given a voluntary-manslaughter instruction.
>
> **Supporting Facts:** Mr. Hamilton was indicted for two counts of aggravated murder, and one count of each of the following offenses: murder, aggravated burglary, felonious assault, tampering with evidence, and violating a protection order. At the close of Mr. Hamilton's trial, the court refused his request that the jury be instructed on the inferior-degree offense of voluntary manslaughter. In the court's opinion, the evidence produced at trial supported a self-defense instruction, but not a voluntary-manslaughter instruction. However, because the facts presented to the jury in Mr. Hamilton's trial warranted an instruction on voluntary manslaughter, Mr. Hamilton was not afforded a meaningful opportunity to present a complete defense, and the trial court usurped the function of the jury by refusing to give such an instruction. *California v. Trombetta*, 467 U.S. at 485; *Cupp v. Naughten*, 414 U.S. 141, 147,94 S.Ct. 396 (1973).

1

(Petition, Doc. No. 1, PageID 15.)

**Procedural History**

On February 21, 2009, Petitioner David Hamilton stabbed Jonathan Jackson during a fight that started in the residence of Stephanie Crump, mother of three of Hamilton's children. Jackson later died before receiving medical help.  The Scioto County grand jury indicted Hamilton on two counts of aggravated murder in violation of Ohio Rev. Code § 2903.01(A) and 2903.01(B), one count of murder in violation of Ohio Rev. Code § 2903.02(B), one count of aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1), one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2)/(D)(1), one count of tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1) and one count of violating a protection order issued against him at the request of Stephanie Crump in violation of Ohio Rev. Code § 2919.27(A)(1). A jury acquitted him on one of the counts of aggravated murder, but convicted him on all other counts.  The trial judge sentenced him to life imprisonment with parole eligibility at thirty years on the aggravated murder conviction, merged the murder and felonious assault counts with the aggravated murder count, and imposed concurrent sentences on the remaining counts.

Hamilton appealed to the Fourth District Court of Appeals raising one assignment of error:

> The trial court abused its discretion and deprived Mr. Hamilton of his right to due process under the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution by denying Mr. Hamilton's request that the jury receive a voluntary-manslaughter instruction.

(Appellant's Brief, Return of Writ, Doc. No. 6, Ex. 6.)  The Fourth District decided that sole assignment of error as follows:

[*P68] In his sole assignment of error, Hamilton contends that the trial court erred when it refused to give the jury an instruction on voluntary manslaughter.

[*P69] "Generally, a trial court has broad discretion in deciding how to fashion jury instructions. A trial court must not, however, fail to 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.' *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, [at] paragraph two of the syllabus. Additionally, a trial court may not omit a requested instruction, if such instruction is 'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.' *State v. Lessin*[,] 67 Ohio St.3d 487, 493, [1993 Ohio 52, 620 N.E.2d 72] (quoting *State v. Nelson* (1973), 36 Ohio St.2d 79, 303 N.E.2d 865, [at] paragraph one of the syllabus).

[*P70] "In determining whether to give a requested jury instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction. See [*Lessin*] at 494. A trial court is therefore vested with discretion to determine whether sufficient evidence was presented at trial [to] require[ ] a particular jury instruction. [*State v. Mitts*, 81 Ohio St.3d 223, 228, 1998 Ohio 635, 690 N.E.2d 522.]  If, however, the evidence does not warrant an instruction a trial court is not obligated to give the requested instruction. See *Lessin * * * at 494. Thus, in our review we must determine whether the trial court abused its discretion by finding that the evidence was insufficient to support the requested charge. See *Mitts* [at 228]; *State v. Wolons* (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, [at] paragraph two of the syllabus[.]" *Smith v. Redecker*, Athens App. No. 08CA33, 2010 Ohio 505, at ¶51-52. See, also, *State v. Gary*, Hamilton App. No. C-090643, 2010 Ohio 5321, at ¶23; *State v. Jordan*, Trumbull App. No. 2009-T-0110, 2010 Ohio 5183, at ¶27; *State v. McClendon*, Montgomery App. No. 23558, 2010 Ohio 4757, at ¶13; State v. Carter, Ross App. No. 10CA3169, 2010 Ohio 6316, at ¶50-51; but, see, *State v. Howard*, Ross App. No. 07CA2948, 2007 Ohio 6331, at ¶27 ("[T]he issue of whether an instruction is required presents a question of law for de novo review.").

[*P71] R.C. 2903.03(A) defines voluntary manslaughter. This statute provides that "[n]o person, while under the influence of

sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *."

[*P72] "Before giving a jury instruction on voluntary manslaughter in a murder case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." *State v. Shane* (1992), 63 Ohio St.3d 630, 590 N.E.2d 272, at paragraph one of the syllabus. "In making that determination, trial courts must apply an objective standard: 'For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" *State v. Elmore*, 111 Ohio St. 3d 515, 2006 Ohio 6207, at ¶81, 857 N.E.2d 547, quoting *Shane* at 635.

[*P73] If the objective prong is met, "the inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage. It is only at that point that the '* * * emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * *' must be considered." *Shane* at 634, quoting *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, at paragraph five of the syllabus.

[*P74] When analyzing the subjective prong, "evidence supporting the privilege of self-defense, i.e., that the defendant feared for his own and other's personal safety, does not constitute sudden passion or a fit of rage as contemplated by the voluntary manslaughter statute." *State v. Harris* (1998), 129 Ohio App.3d 527, 535, 718 N.E.2d 488. "While selfdefense [sic] requires a showing of fear, voluntary manslaughter requires a showing of rage, with emotions of 'anger, hatred, jealously, and/or furious resentment.'" *State v. Levett*, Hamilton App. No. C-040537, 2006 Ohio 2222, at ¶29, quoting *State v. Perdue*, 153 Ohio App.3d 213, 2003 Ohio 3481, at ¶12, 792 N.E.2d 747; see, also, *State v. Sudderth*, Lawrence App. No. 07CA38, 2008 Ohio 5115, at ¶14; *State v. Hendrickson*, Athens App. No. 08CA12, 2009 Ohio 4416, at ¶45-46; *State v. Caldwell* (Dec. 17, 1998), Franklin App. No. 98AP- 165, 1998 Ohio App. LEXIS 6220; *State v. Tantarelli* (May 23, 1995), Franklin App. No. 94APA11-1618, 1995 Ohio App. LEXIS 2186 ("[A]ppellant himself testified that he was dazed and confused and that he was scared. Appellant did not state that he was angry. Instead, appellant testified that his only intent was to stop the victim from hitting him anymore. The evidence presented by

appellant simply does not fit into the definition of voluntary manslaughter and the trial court correctly decided not to give this instruction to the jury.").

**[\*P75]** Here, even assuming that the objective prong was satisfied, Hamilton did not satisfy the subjective prong of the voluntary-manslaughter test. There was insufficient evidence that Hamilton actually was under the influence of sudden passion or in a sudden fit of rage. Hamilton testified at length that he killed Jackson out of fear for his own safety.

**[\*P76]** Hamilton claimed that he acted in self-defense, not under the influence of sudden passion or in a sudden fit of rage. Hamilton testified that Jackson was the initial aggressor. Hamilton testified that Jackson threw him (i.e., Hamilton) against the refrigerator. Then, after Hamilton attempted to get away, Hamilton testified: "[Jackson] grabs hold of me again and he's just throwing me around. I get threw back up against the refrigerator, and at this point I don't know who this person is, and I don't know why he's even trying to fight with me. *I'm pretty scared*. I remember grabbing a knife." Tr. at 952-53 (emphasis added).

**[\*P77]** Hamilton testified that he showed Jackson the knife, but it "just seemed like it didn't bother [Jackson.]" Id. at 954. Hamilton then testified that he tried to make his way to the front door, but Jackson pulled him back. Hamilton testified: "I'm not fighting with him. He's still * * * coming at me." Id. at 955.

**[\*P78]** Hamilton testified that Jackson was choking him when Hamilton started stabbing Jackson. And Hamilton claimed that he (i.e., Hamilton) was really scared when he started stabbing Jackson: "[Jackson] puts his arms around my neck and he's just standing there and choking me; and I can't breathe and I'm, *I'm really scared*. * * * And I just want to get this guy off me so I take the knife and started stabbing him." Id. at 955- 56 (emphasis added). Hamilton also testified that, when the stabbing began, "I started to panic. I couldn't breathe. I just, I thought I was going to die." Id. at 1027.

**[\*P79]** Additionally, on cross-examination, Hamilton testified that he was not angry when the confrontation with Jackson began:

**[\*P80]** "Q. Now this guy comes in [to Crump's apartment] and you're telling him to leave."

**[\*P81]** "A. Yes.

5

[*P82] "Q. And what is he telling you?

[*P83] "A. I just know that he was there to get the beer. He said something about getting some beer.

[*P84] "Q. And he's not leaving.

[*P85] "A. He's not leaving.

[*P86] "Q. Did it make you angry?

[*P87] "A. No.

[*P88] "Q. No?

[*P89] "A. No." Tr. at 1009.

[*P90] Thus, Hamilton repeatedly testified that he was afraid of Jackson. And Hamilton specifically stated that he was not angry when he confronted Jackson. The evidence before the trial court showed that neither rage nor passion motivated the killing. As the trial court properly determined, the evidence supported an instruction on self-defense, not voluntary manslaughter.

[*P91] Hamilton argues that, although he testified that he was scared when the confrontation began, he did not testify that he remained scared. As evidence that Hamilton acted out of rage, Hamilton points to Fenimore's testimony that Hamilton chased Jackson down the street and stabbed Jackson several more times before Hamilton ran off. [FN 1 Hamilton testified that he did not stab Jackson outside of Crump's apartment, and Hamilton acknowledged that his testimony was different from Fenimore's regarding the events outside Crump's apartment.] Hamilton notes that Dr. Susan Allen, the forensic pathologist who performed the autopsy on Jackson, testified that Jackson sustained eleven stab wounds. Hamilton also alludes to the on-again-off-again and jealous nature of Hamilton's relationship with Crump to support the argument that Hamilton acted out of rage when he confronted Jackson in Crump's apartment.

[*P92] This is not sufficient evidence to warrant a voluntary manslaughter instruction. While it may be "some evidence," at best, of rage or passion, the Supreme Court of Ohio has cautioned that "some evidence" supporting a voluntary manslaughter instruction does not mean that a voluntary manslaughter instruction

6

must be given. See Shane at 633 ("To require an instruction to be given to the jury every time 'some evidence,' however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense."); see, also, *State v. Young* (Sep. 20, 1999), Belmont App. No. 96-BA-34, 1999 Ohio App. LEXIS 4365; *State v. Collins* (1994), 97 Ohio App.3d 438, 446, 646 N.E.2d 1142.

[*P93] Here, Hamilton's attempt to shoehorn a voluntary manslaughter argument with "some evidence" of rage or passion must fail. Hamilton made it very clear that neither rage nor passion motivated the killing. He testified that he was acting in self-defense. Hamilton did not indicate that his fear of Jackson ever transformed into rage, and the record does not support such a conclusion. Fennimore's testimony that Hamilton stabbed Jackson outside Crump's apartment, which Hamilton denied, does not necessarily show that Hamilton acted out of rage. Moreover, considering the severity of the struggle, evidence that Jackson sustained eleven stab wounds is not sufficient to demonstrate rage or passion. And there is no evidence that Hamilton killed Jackson in a fit of rage or passion caused by jealousy over Crump. Thus, the trial court correctly denied the voluntary manslaughter instruction. See *Hendrickson* at ¶46 ("Clearly, the crux of Hendrickson's testimony was that [he] acted out of fear, not passion or rage. He consistently testified that he was 'fearful' for his life and 'scared' he might die; he 'panicked' and reacted to protect himself. * * * Because Hendrickson failed to present evidence to show that he actually acted under a sudden passion or fit of rage, the trial court was correct in refusing to instruct on voluntary manslaughter.").

[*P94] Finally, Hamilton argues, "given that the jury found Mr. Hamilton not guilty of premeditated murder, the trial court's decision not to give a voluntary-manslaughter instruction prejudiced the outcome of Mr. Hamilton's trial." Appellant's Brief at 29. Hamilton apparently argues that the acquittal on the premeditated murder count demonstrates that, had the trial court given a voluntary manslaughter instruction, the jury would have convicted Hamilton of voluntary manslaughter rather than murder. We disagree.

[*P95] "Even though voluntary manslaughter is not a lesser-included offense of murder, the test for whether a trial court should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test applied when a

defendant seeks an instruction on a lesser-included offense." *Levett* at ¶24, citing *Shane* at 632. "A trial court is required to instruct the jury on a lesser-included offense 'only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense.'" *Levett* at ¶25 quoting *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, at paragraph two of the syllabus.

[*P96] Hamilton's acquittal on premeditated murder does not mean that the trial court should have given a voluntary manslaughter instruction. The jury found Hamilton not guilty of aggravated murder in violation of R.C. 2903.01(A), which provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another." Despite acquitting Hamilton on the premeditated murder charge, the jury convicted him of two other counts of murder. The jury convicted Hamilton for violating both R.C. 2903.01(B) and R.C. 2903.02(B). R.C. 2903.01(B) prohibits causing the death of another while committing or attempting to commit "kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape." (The jury convicted Hamilton of aggravated burglary). And R.C. 2903.02(B) prohibits proximately causing the death of another while committing a crime of violence that is a felony of the first or second degree (here, felonious assault - a second degree felony).

[*P97] A defendant can commit murder in violation of either R.C. 2903.01(B) or 2903.02(B) without the elements necessary for voluntary manslaughter present (i.e., provocation by the victim and uncontrollable rage by the defendant). Thus, it does not follow that the acquittal on premeditated murder demonstrates that, had the jury been instructed on voluntary manslaughter, the jury would have convicted Hamilton of voluntary manslaughter, instead of the other counts of murder. Additionally, the lesser included- offense test was not met because the evidence did not support a conviction for voluntary manslaughter. As detailed above, Hamilton did not satisfy the subjective prong of the voluntary-manslaughter test.

[*P98] Thus, the trial court did not abuse its discretion when it declined to give a jury instruction on voluntary manslaughter. Accordingly, we overrule Hamilton's sole assignment of error.

*State v. Hamilton*, 2011-Ohio-2783, ¶¶ 68-98, 2011 Ohio App. LEXIS 2387 (4th Dist. June 2, 2011). The Ohio Supreme Court declined to exercise jurisdiction over a subsequent appeal.

*State v. Hamilton*, 2011-Ohio-5358, 2011 Ohio LEXIS 2604 (2011). The Petition in this case was timely filed thereafter on September 19, 2012.

# Analysis

## Procedural Default by Failure to Fairly Present

The Warden asserts that Hamilton's claim was not fairly presented to the Ohio courts as a federal constitutional claim or under the same theory he now advances and the claim is therefore procedurally defaulted (Return, Doc. No. 6, PageID 35-41). Petitioner responds:

> But the United States Court of Appeals for the Sixth Circuit has considered and applied the constitutional principles previously espoused by the Supreme Court of the United States in *California v. Trombetta* to a habeas petitioner's claim that he was denied a meaningful opportunity to present a complete defense. See *Taylor v. Withrow,* 288 F.3d 846 (6th Cir. 2002).

(Reply, Doc. No. 8, PageID 1948.)

### Fair Presentation Standard

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792

(6th Cir. 1991).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).

A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to find material that will alert it to the presence of such a claim. *Baldwin v. Reese*, 541 U.S. 27 (2004).  When a defendant does so little to present his claim that it has not been fairly presented, then the presumption under *Harrington v. Richter* that the state court decided the claim on the merits is "*fully rebutted.*" *Johnson v. Williams, 568 U.S. ___,* 133 S. Ct. 1088, *; 185 L. Ed. 2d 105 (2013).  On the other hand, when a federal claim is fairly presented but not addressed, "a federal habeas court must presume that the federal claim was adjudicated on the merits. . ." *Ross v. Pineda*, 2013 U.S.

App. LEXIS 25481 (6th Cir. 2013), *quoting Johnson v. Williams,* 133 S. Ct. 1088, 1096 (2013)(emphasis added).

A petitioner fairly presents a federal habeas claim to the state courts only if he "asserted both the factual and legal basis for his claim. *Hicks v. Straub*, 377 F.3d 538 (6th Cir. 2004), *citing McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); and *Picard v. Connor*, 404 U.S. 270, 276, 277-78 (1971).

**Application**

Petitioner's response on the fair presentation argument completely misses the point.  The question is not whether Hamilton could have argued a claim under *California v. Trombetta* in the state courts, but whether he actually did make such an argument.

Hamilton's Merit Brief is Exhibit 6 to the Return of Writ (Doc. No. 6).  It was prepared and filed by Attorney Katherine Szudy who continues to represent Hamilton in this Court.  The single assignment of error asserts that it was both an abuse of discretion and a violation of the Fourteenth Amendment Due Process Clause to refuse the requested voluntary manslaughter instruction.  *Id.* at PageID 78. Counsel cited sixteen cases in support of Hamilton's position; none of them are federal cases.  *Id.*  at PageID 80.  The Statement of the Case says simply "[t]his direct appeal concerns the violation of David Hamilton, Jr.'s right to due process when the trial court refused to give the jury a voluntary-manslaughter instruction."  *Id.*  at PageID 83.

At the beginning of the Argument section of the Merit Brief, counsel states that the issue presented for review is "[d]id the trial court abuse its discretion when it denied Mr. Hamilton's request for a voluntary manslaughter instruction?"  This is immediately followed by the

sentence, "[t]he trial court deprived Mr. Hamilton of his right to due process when it denied his request that the jury receive a voluntary-manslaughter instruction." *Id.* at PageID 106. No federal case law was cited; in particular, *Trombetta*, which the court of appeals is accused here of misapplying.

A petitioner fairly presents a federal habeas claim to the state courts only if he "asserted both the factual and legal basis for his claim." *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004), *citing McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); and *Picard v. Connor*, 404 U.S. 270, 276, 277-78 (1971).

> In determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, we consider whether: 1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; 2) the petitioner relied upon federal cases employing the constitutional analysis in question; 3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or 4) the petitioner alleged "facts well within the mainstream of [the pertinent] constitutional law."

*Hicks* at 552-53, *citing McMeans*, 228 F.3d at 681. Hamilton does not satisfy the first of these options. Merely reciting the words "due process" does not make a constitutional argument. *Riggins, supra.* Hamilton does not satisfy the second option because he cites no federal case law at all.

With respect to the third option, the state cases cited by Hamilton are as follows:

*State v. Comen,* 50 Ohio St. 3d 206 (1990), held that a trial judge should have repeated a jury instruction on credibility and weighing of the evidence because Ohio R. Crim. P. 30(A) requires that the jury be instructed after arguments are completed. *Id.* ¶ 2 of the syllabus. No constitutional analysis is given at all.

12

*State v. Conway*, 108 Ohio St. 3d 214 (2006), is a capital case which was before the Ohio Supreme Court on direct appeal. The court held that voluntary manslaughter is an inferior degree of aggravated murder and that a person "charged with aggravated murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the aggravated murder charge and a conviction of voluntary manslaughter." *Id.* at ¶ 130, *citing State v. Shane*, 63 Ohio St. 3d 630, 632 (1992). No constitutional right is cited as the basis for that entitlement. *Shane* also cites no federal constitutional right.

*State v. Elmore*, 111 Ohio St. 3d 515 (2006), is also a capital case. It also stands for the proposition that voluntary manslaughter is an inferior degree offense to aggravated murder. Following *Shane*, the court held that an instruction on voluntary manslaughter is required only when there is sufficient evidence of provocation "to arouse the passions of an ordinary person beyond the power of his or her control." *Id.* at ¶ 81. The court found no abuse of discretion in refusing the instruction, given the state of the evidence. *Id.* at ¶ 86. No constitutional analysis was given.

In *State v. Garltic*, 2008-Ohio-4575, 2008 Ohio App. LEXIS 3852 (8th Dist. Sept. 11, 2008), the court of appeals noted that the jury had found sufficient provocation to convict of aggravated assault rather than the charged felonious assault. Under those circumstances, it was found likely they would have convicted on attempted voluntary manslaughter rather than attempted murder, if they had been permitted to consider the inferior offense. Defense counsel admitted he should have asked for the instruction and was found ineffective for failing to do so. No constitutional analysis was offered.

*State v. Harris*, 129 Ohio App. 3d 527 (10th Dist. 1999), states the standard for a

voluntary manslaughter instruction in the context where self-defense is also claimed:

> [A] defendant is entitled to an instruction on the lesser offense of voluntary manslaughter if the evidence, when construed most favorable to the defendant, would allow the jury to reasonably find that the defendant established, by a preponderance of the evidence, that he acted under the influence of sudden passion or fit of rage brought on by serious provocation by the victim that is reasonably sufficient to incite the use of deadly force. *State v. Rhodes* (1992), 63 Ohio St. 3d 613, 617-618, 590 N.E.2d 261. To warrant such an instruction, both an objective and subjective test must be established. *State v. Shane* (1992), 63 Ohio St. 3d 630, 634-635, 590 N.E.2d 272. First, the provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. *Id.* at 635. Second, if that objective test is met, the defendant must show that in this particular case he was actually under the influence of sudden passion or in a sudden fit of rage. *Id.* at 634; see, generally, *State v. Thomas*, 1996 Ohio App. LEXIS 1316 (Mar. 26, 1996), Franklin App. No. 95APA08-984, unreported (1996 Opinions 1115, 1118-1119). In determining whether this subjective requirement has been satisfied, the emotional and mental state of the defendant, as well as the conditions and circumstances that surrounded him, must be considered.

> Appellant incorrectly contends that the same evidence that supported his claim of self-defense and defense of others also supported his request for an instruction on voluntary manslaughter. As noted above, voluntary manslaughter requires that the defendant be under the influence of sudden passion or a fit of rage. Thus, this court has held that evidence supporting the privilege of self-defense, *i.e.*, that the defendant feared for his own and other's personal safety, does not constitute sudden passion or fit of rage as contemplated by the voluntary manslaughter statute. See *State v. Tantarelli*, 1995 Ohio App. LEXIS 2186 (May 23, 1995), Franklin App. No. 94APA11-1618, unreported (1995 Opinions 2144, 2151) (testimony that defendant was dazed, confused, and scared was insufficient to show sudden passion or fit of rage); *State v. Thompson*, 1993 Ohio App. LEXIS 1198 (Feb. 23, 1993), Franklin App. No. 92AP-1124, unreported (1993 Opinions 485, 489) ("Self defense on the one hand requires a showing of fear, whereas voluntary manslaughter requires rage.").

*Id.* at 534-35. The court found insufficient evidence of sudden passion or fit of rage and affirmed the conviction. No constitutional analysis was offered at all.

14

*State v. Lessin*, 67 Ohio St. 3d 487 (1993), is a flag-burning case where the trial court refused an instruction that burning the flag is protected speech.  The Ohio Supreme Court held this was an abuse of discretion.  The only constitutional analysis is of the First Amendment issue.

In *State v. Levett,* 2006-Ohio-2222, 2006 Ohio App. LEXIS 2046 (1st Dist. May 5, 2006), defendant had sought an instruction on voluntary manslaughter which was refused.  The court followed *Shane*, *supra*, in holding that the provocation must be "reasonably sufficient to incite the defendant to use deadly force. For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Id.* at ¶ 27.  It distinguished between the subjective evidence needed to support self-defense and that needed to support voluntary manslaughter:

> **[\*P28]** At trial, Levett claimed that he had acted out of fear, not anger. He testified that he had shot Monty in self-defense because he feared for his life.
>
> **[\*P29]** But evidence supporting the privilege of self-defense-that the defendant feared for his and others' personal safety-does not necessarily constitute sudden passion or a fit of rage as contemplated by the voluntary-manslaughter statute. See *State v. Perdue*, 153 Ohio App.3d 213, 2003 Ohio 3481, at P12, 792 N.E.2d 747, *quoting State v. Harris* (1998), 129 Ohio App.3d 527, 535, 718 N.E.2d 488; *see, also, State v. Tantarelli* (May 23, 1995), 10th Dist. No. 94APA11-1618, 1995 Ohio App. LEXIS 2186. While self-defense requires a showing of fear, voluntary manslaughter requires a showing of rage, with emotions of "anger, hatred, jealousy, and/or furious resentment." *Id.*  The Ohio Supreme Court has specifically held that "fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack*, 82 Ohio St. 3d 198, 201, 1998 Ohio 375, 694 N.E. 2d 1   328.

*Id.* at ¶¶ 28-29.  Once again no constitutional analysis is offered and no federal cases are cited.

In *State v. Mack*, 82 Ohio St. 3d 198 (1998), the defendant was charged with felonious assault and sought an instruction on the lesser offense of aggravated assault.  While the court of

appeals agreed, the Ohio Supreme Court reversed, holding that serious provocation had to be reasonably sufficient to bring on extreme stress and that "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *Id.* at 201, citing prior Ohio appellate case law.  No constitutional analysis was offered.

*State v. Mitts*, 81 Ohio St. 3d 223 (1998), is another capital case.  The court held it was within the discretion of the trial court to determine if the evidence in a case is sufficient to support acquittal on the basis of intoxication and to give an instruction on intoxication only in that instance.  *Id.* at 228.  The court further found no error in refusing an instruction that the jury could consider intoxication in mitigation when the standard Ohio instruction on mitigation had been given.

*State v. Nelson,* 36 Ohio St. 2d 79 (1973), is an armed robbery case in which the defendant did not testify and the trial court refused to instruct the jury they could not consider that fact.  The Ohio Supreme Court found no federal constitutional obligation to give the instruction, but reversed because the instruction was required by Ohio Revised Code § 2945.10(E).[1]

In *State v. Rhodes*, 63 Ohio St. 3d 613 (1992), the court held that the facts necessary to established a reduction of murder to voluntary manslaughter must be proved by the defendant by a preponderance of the evidence.

*State v. Shane*, 63 Ohio St. 3d 630 (1992), also upheld placing the burden of proving mitigating facts on the defendant.  It held:

> To require an instruction to be given to the jury every time "some evidence," however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could

---

[1] As the court noted, that statute has been superseded by Ohio R. Crim. P. 30, cited above in more recent cases.  The Ohio Rules of Criminal Procedure were adopted July 1, 1973, after *Nelson* was tried, but before the decision in the Ohio Supreme Court.

> ever refuse to give an instruction on a lesser included (or inferior-degree) offense. Trial judges are frequently required to decide what lesser included (or inferior-degree) offenses must go to the jury and which must not. The jury would be unduly confused if it had to consider the option of guilty on a lesser included (or inferior-degree) offense when it could not reasonably return such a verdict.

*Id.* at 633. It also noted that a defendant must offer both objective and subjective proof to mitigate a murder to voluntary manslaughter:

> An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components. [1] In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must be applied. Then, if that standard is met, the inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage. It is only at that point that the "* * * emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * *" must be considered. *Deem, supra*, paragraph five of the syllabus. If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction. In that event, the objective portion of the consideration is not met, and no subsequent inquiry into the subjective portion, when the defendant's own situation would be at issue, should be conducted. [Footnote 2 omitted.]

>> [FN 1.] There are four obstacles for the defendant to overcome before he can have his intentional killing reduced from murder to voluntary manslaughter: (1) There must have been a reasonable provocation. (2) The defendant must have been in fact provoked. (3) A reasonable man so provoked would not have cooled off in the interval of time between the provocation and the delivery of the fatal blow. And (4), the defendant must not in fact have cooled off during that interval." 2 LaFave & Scott, Substantive Criminal Law (1986) 255, Section 7.10.

>> Factors (1) and (3) are objective; factors (2) and (4) are subjective. For purposes of this discussion, we assume

17

> that factors (3) and (4) are present. We also accept factor
> (2) as true, in part because we must consider the evidence
> in the light most favorable to the defendant. Therefore, we
> focus our inquiry on factor (1).

*Id.* at 634.  No constitutional analysis is offered.

*State v. Smith*, 168 Ohio App. 3d 141 (1st Dist. July 21, 2006), the court held that the

provocation instruction must be given in a felonious assault case to allow the jury to consider

aggravated assault unless the trial judge finds as a matter of law that no reasonable jury could

find the provocation was adequate and actual. *Id.* at ¶ 51.  No constitutional analysis was given.

In *State v. Sudderth,* 2008-Ohio-5115, 2008 Ohio App. LEXIS 4298 (4th Dist. Sept. 29,

2008), the court held the voluntary manslaughter instruction had been deliberately waived and

the evidence was, in any event, insufficient to support that charge.  Here, also, the United States

Constitution was not discussed.

In *State v. Thompson,* 2010-Ohio-1680, 2010 Ohio App. LEXIS 1404 (2nd Dist. April 16,

2010), the defendant had claimed that an instruction about verdict forms denied him due process

and a fair trial.  *Id.* at ¶ 155.  The court concluded the error was constitutionally harmless

because no reasonable juror could have concluded the injuries proven were anything less than

serious physical harm.

In *State v. Wolons*, 44 Ohio St. 3d 64 (1989), the trial court refused an instruction on

voluntary intoxication because even a blood alcohol level of .25 would fall "short of negating a

conscious awareness of the circumstances and events that transpired on the night of the

stabbing." *Id.* at 69.  The United States Constitution is not considered as having any bearing on

the question presented.

Thus in all eighteen of the cases relied on by Hamilton in the court of appeals, only one –

*State v. Thompson* -- involved constitutional analysis of failure to present an issue to the jury at

18

all analogous to the question here; the other constitutional case involved the First Amendment.

Hamilton is then left with the fourth option:  alleging facts well within the mainstream of pertinent constitutional law.  Because Hamilton essentially ignores the State's fair presentation argument, he has not attempted to show he satisfies this option.  Since he claims the state court misapplied *California v. Trombetta*, 467 U.S. 479 (1984), examining that case will provide guidance on what facts are within the mainstream of pertinent law.

*Trombetta* is appropriately seen, and most often cited, as within the line of Supreme Court cases about the state's duty to make evidence available to a criminal defendant.  Along the way to discussion of that issue, Justice Marshall notes:

> Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. To safeguard that right, the Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." *United States* v. *Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system.

*Id.* at 485.  Thus while *Trombetta* stands for the proposition for which Hamilton cites it – that a defendant has the right to present a complete defense – it decides nothing about that general proposition except that the State was under no duty to preserve breath samples in a DUI case.

Hamilton also relies on *Cupp v. Naughten*, 414 U.S. 141 (1973), which is about the content of jury instructions, in contrast to *Trombetta*.  The Court recognized that it is possible for a jury instruction to violate a right guaranteed to a defendant by the Fourteenth Amendment, but found an instruction that witnesses are presumed to speak the truth did not shift the burden of proof to a defendant and was not unconstitutional.  The instruction at issue in *Cupp* bears no

19

relation to the instruction at issue in this case.

Having considered thoroughly all the possible ways that it might be argued that Hamilton's constitutional claim was fairly presented to the state courts, the Magistrate Judge concludes it was not.  Hamilton procedurally defaulted in presenting this claim to the state courts and the Petition should be dismissed with prejudice on that basis.


**Claim Not Cognizable in Habeas Corpus**


In addition to the procedural default defense, the Warden also asserts that Hamilton's claim is not cognizable in habeas corpus.  The State relies on the refusal of the Supreme Court to decide whether giving a lesser-included-offense instruction was constitutionally required in a non-capital case, *citing Beck v. Alabama*, 447 U.S. 625 (1980).

Hamilton does not directly address this argument.  Instead, he points to the Sixth Circuit's consideration of a similar issue in *Taylor v. Withrow,* 288 F.3d 846 (6th Cir. 2001).  In that case the trial judge had refused to instruct on self-defense, but the Sixth Circuit held

> [T]he right of a defendant in a criminal trial to assert self-defense is one of those fundamental rights, and that failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause.
>
> . . .
>
> In finding that the right to claim self-defense is a fundamental right we break no new ground. Other Courts of Appeals have already reached the same conclusion. In a recent case Judge Easterbrook held that "when there is evidentiary support for a defendant's theory of self-defense, failure to instruct on self-defense violates a criminal defendant's Fifth and Sixth Amendment rights," *Sloan v. Gramley*, 2000 U.S. App. LEXIS 8815, 2000 WL 536164, at **3 (7th Cir., May 1, 2000), and Judge Richard Arnold also recently

> found that a criminal defendant "is entitled to a self-defense instruction if there is evidence to support his theory," *Clemmons v. Delo*, 177 F.3d 680, 685 (8th Cir. 1999). This Court has also already held, as have other Courts of Appeals, that in certain circumstances refusing to instruct a jury properly on self-defense can so taint the resulting verdict as to be an error of constitutional dimension. *See, e.g.*, *Davis v. Strack*, 270 F.3d 111, 116 (2d Cir. 2001); *Barker v. Yukins*, 199 F.3d 867, 872-73 (6th Cir. 1999), *cert. denied sub nom*, *Yukins v. Barker*, 530 U.S. 1229, 147 L. Ed. 2d 273, 120 S. Ct. 2658 (2000).

*Id.* at 852. Judge Merritt recognized that the Supreme Court had not yet held the right to assert

self-defense was a fundamental right, but noted:

> The lack of an explicit statement to this effect is not determinative. The Court has made clear that its relevant precedents include not only bright-line rules but also the legal principles and standards flowing from precedent. *See Williams*, 529 U.S. at 407. We believe that the rule that a defendant is under certain circumstances entitled to a self-defense instruction follows inescapably not only from our legal heritage but also from the Court's holding in *Trombetta* that a defendant has the right to present a meaningful defense. *See* 467 U.S. at 485. This is an example of a *rara avis*:[2] a fundamental constitutional rule dictated by precedent but "so unexceptional that it [has] never been drawn into question in a reported case," at least a Supreme Court case. *Tyson v. Trigg*, 50 F.3d 436, 440 (7th Cir. 1995).

*Id.* at 852-53. However, the Sixth Circuit went on to conclude that the instruction on self-

defense was not required in this case. It relied on *Mathews v. United States*, 485 U.S. 58 (1988),

to conclude:

> The rule set out above does not give a defendant the right to offer any defense, nor to demand a jury be instructed on any theory. As set down in *Mathews*, the rule states that "a defendant is entitled to an instruction as to any recognized defense *for which there exists evidence sufficient for a reasonable jury to find in his favor*." 485 U.S. at 63-64 (emphasis added). Here, under Michigan law as interpreted by the state courts in this case, that condition was not met, and we are unable to find Michigan's evidentiary requirements on this subject to be unconstitutional.

---

[2] Rare bird in Latin.

*Id.* at 853.

As against *Taylor*, the Warden relies on a number of Sixth Circuit cases.  In *Scott v. Elo*, 302 F.3d 598 (6th Cir. 2002), the court noted:

> Although the Supreme Court has held that it is a violation of due process for a court to fail to instruct on a lesser included offense supported by the evidence in a capital case, *see Beck v. Alabama*, 447 U.S. 625, 627, 65 L. Ed. 2d 392, 100 S. Ct. 2382 (1980), it has not so held in noncapital cases. To the contrary, the Sixth Circuit has held that failure to instruct on a lesser included offense in a noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990).

*Id.* at 606.  The omitted instruction in *Scott* was on the lesser-included offense of involuntary manslaughter.

*Campbell v. Coyle*, 260 F.3d 531 (6th Cir. 2001) is a capital habeas case.  Charged with aggravated murder, Campbell sought and was refused a lesser-included offense instruction on involuntary manslaughter.  The Sixth Circuit held:

> A decision as to whether a *Beck* instruction is required is a fact-specific inquiry in which a court must determine whether there were sufficient facts for a reasonable jury to conclude that such an intent did not exist. That was precisely the inquiry made by the Ohio court. Indeed, the core conclusion reached by the Ohio Supreme Court was that "the number and location of his victim's wounds would compel any reasonable trier of fact to find intent to kill." *Campbell*, 630 N.E.2d at 350. Campbell has produced nothing from the case law or the record that indicates such a conclusion was unreasonable.

*Id.* at 545.

The Warden cites a number of other unpublished opinions of the Sixth Circuit and of district courts within the circuit to the same effect.

Reading this Sixth Circuit case law together, the Magistrate Judge concludes that the

right to raise self-defense is a fundamental right recognized by *Taylor*, but not a right on which a defendant is entitled to an instruction unless he presents evidence sufficient to permit a jury to find that he acted in self-defense.  On the other hand, there is no constitutional compulsion to give a lesser-included or lesser degree instruction in a non-capital case.  The Warden is therefore correct that the particular claim made here by Hamilton – a constitutional right to a voluntary manslaughter instruction in a murder cases – is not cognizable in habeas corpus.

**Merits of the Claim**

For the sake of completeness of analysis, the Court will assume *arguendo* that the claim was fairly presented to the Ohio courts and does state a claim on which habeas relief can be granted and turn in the alternative to an analysis on the merits.

The court of appeals framed the issue thus: "[W]e must determine whether the trial court abused its discretion by finding that the evidence was insufficient to support the requested charge." *State v. Hamilton, supra*, ¶ 70.  Relying on *Shane*, *Elmore*, and *Deem*, the court concluded Ohio law requires a defendant to meet both objective and subjective tests to show provocation sufficient to reduce murder to voluntary manslaughter. *Id.* at ¶ 72.  "When analyzing the subjective prong, "evidence supporting the privilege of self-defense, i.e., that the defendant feared for his own and other's personal safety, does not constitute sudden passion or a fit of rage as contemplated by the voluntary manslaughter statute.'" *Id.* at ¶ 74, *quoting State v. Harris* (1998), 129 Ohio App.3d 527, 535, 718 N.E.2d 488.  The court then quoted at great length Hamilton's own testimony that he was afraid and not enraged. *Id.* at ¶¶ 75-93.

In arguing that the evidence supported a finding of voluntary manslaughter, Hamilton

admits that he testified he was scared before he grabbed the knife, but "Mr. Hamilton did not stated that he *remained* scared as the altercation between him and Mr. Jackson escalated." (Reply, Doc. No. 8, PageID 1943, citing Trial Tr. Vol. 5, at PageID 1696-1699.)  Of course, if Hamilton had not remained scared, he would not have been entitled to the self-defense instruction he also wanted and received.  Counsel also emphasizes testimony from Mr. Fenimore and Dr. Allen from which a reasonable juror could have inferred rage.  But the ultimate determinant is what actual state of mind Hamilton had and he testified he was not enraged, but frightened.  Even in arguing for the instruction, in a passage quoted in the Reply, defense counsel emphasized the factors which could reasonably have made Hamilton enraged and the prosecutor responded by citing Hamilton's own testimony (Reply, Doc. No. 8, PageID 1945-46).  Under all the Ohio law cited by Hamilton to the court of appeals, evidence of facts which would have been enough to make a reasonable person enraged fit the objective prong of the test; they cannot overcome the defendant's own testimony that they did not enrage him, because a subjective state of rage or passion is also required to be proved.

**Conclusion**

Hamilton's claim is procedurally defaulted and he does not state a claim of deprivation of a constitutional right.  Even if the Court reaches the merits, habeas relief is not warranted because the state court of appeals decision is neither contrary to nor an objectively unreasonable application of *California v. Trombetta, supra,* or any other United States Supreme Court precedent, especially *Beck v. Alabama, supra.* The Petition should therefore be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should

24

be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any

appeal would be objectively frivolous.

January 27, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).